UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YING XIONG,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security<br><br>Defendant. | No. 2:17-cv-365-EFB<br><br><br>MEMORANDUM AND ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. The parties have filed cross-motions for summary judgment. ECF Nos. 17 & 21. For the reasons discussed below, the Commissioner's cross-motion is denied, plaintiff's motion is granted, and the matter is remanded for payment of benefits.

BACKGROUND

On July 13, 2013, plaintiff filed an application for SSI which alleged that he had been disabled since December 1, 2011. Administrative Record ("AR") at 162. Plaintiff's application was denied initially and upon reconsideration. *Id.* at 106-109, 113-117. On June 4, 2015, a hearing was held before administrative law judge ("ALJ") Ross G. Wheatley. *Id.* at 32-85. Plaintiff was represented by counsel at the hearing, at which he and a vocational expert ("VE"), testified. *Id.*

1

On September 10, 2015, the ALJ issued a decision finding that plaintiff was not disabled under section 1614(a)(3)(A) of the Act.[1] *Id.* at 15-27. The ALJ made the following specific findings:

1. The claimant has not engaged in Substantial Gainful Activity (SGA) since July 31, 2013, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairment: schizophrenia (20 CFR 416.920(c)).

* * *

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq.* Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq.* Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

* * *

4. After careful consideration of the entire record, the undersigned finds that the claimant has the Residual Functional Capacity (RFC) to perform a full range of work at all exertional levels. The claimant has the following nonexertional limitations: he is limited to simple as defined in the Dictionary of Occupational Titles (DOT) as Specific Vocational Preparation (SVP) levels 1 and 2, routine and repetitive tasks. The work should only involve occasional changes in the work setting and no interaction with the general public. Work should be isolated with only occasional supervision. Work can be around coworkers throughout the day, but only occasional interaction with coworkers.

* * *

5. The claimant has no Past Relevant Work (PRW) (20 CFR 416.965).

6. The claimant was born [in] 1994, and was 19 years, which is defined as a younger individual age 19-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has limited education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have Past Relevant Work (PRW) (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and Residual Functional Capacity(RFC), there are jobs that exist in significant number in the National Economy that the claimant could perform (20 CFR 416.960(c) and 416.966).

* * *

10. The claimant has not been under a disability, as defined in the Social Security Act, since July 31, 2013, the date the application was filed (20 CFR 416.920(g)).

AR at 17-26.

Plaintiff's request for Appeals Council review was denied on December 14, 2016, leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 1-6.

## LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

## ANALYSIS

Plaintiff argues that the ALJ erred in (1) weighing the medical opinion evidence and (2) failing to properly assess plaintiff's residual functional capacity. ECF No. 17 at 13-19. The court finds the former argument persuasive and, thus, finds it unnecessary to reach the latter.

### I. Applicable Legal Standards

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Lester*, 81 F.3d at 834. Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining medical professional may be rejected for "specific and legitimate" reasons that are supported by substantial evidence. *Id.* at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different

independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). However, "[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

II. Background

There are four relevant physician opinions.

A. Dr. Kazmi

Plaintiff's treating physician was Dr. Syed A. Kazmi. AR at 22-23, 317. On March 23, 2015, Dr. Kazmi composed a written "Medical Assessment of Ability to Do Work-Related Activities" for plaintiff. *Id.* at 317-319. Therein, Kazmi opined that plaintiff's mental health issues rendered him unable to function independently and required that he be supervised to ensure compliance with prescribed medication. *Id.* at 317. Kazmi rated the plaintiff "fair" on the following abilities: (1) relating to co-workers; (2) interacting with supervisors; (3) understanding, remembering, and carrying out simple job instructions; and (4) maintaining his personal appearance. *Id.* at 317-18. He rated every other ability on the checklist as "poor." *Id.* These abilities included, *inter alia*, the ability to: (1) follow work rules; (2) function independently; (3) deal with work stress; and (4) behave in an emotionally stable manner. *Id.*

The ALJ gave reduced weight to Dr. Kazmi's March 2013 opinion. *Id.* at 23. He justified his decision to do so by noting that Kazmi's assessment was inconsistent with plaintiff's medical records. *Id.* Specifically, the ALJ concluded that "it [was] not clear" Dr. Kazmi had factored plaintiff's non-compliance with medication into his assessment. *Id.* The ALJ stated that Kazmi had failed to consider plaintiff's "improved state" – that of being freedom from auditory hallucinations– when he was compliant with treatment. *Id.* The ALJ also emphasized: (1) plaintiff's good relationship with family and authority figures; (2) ability to go to public places like Monterey and clothing stores; and (3) positive interactions with office staff at his psychiatric evaluation. *Id.* The ALJ stated that these factors contradicted Kazmi's "significant social restrictions." *Id.*

5

B. Dr. Lacy

A state agency examining consultative psychologist – Dr. Deborah Lacy – also provided a psychiatric evaluation. *Id*. at 359. In the section of her assessment labelled "Discussion/Prognosis," Lacy opined that plaintiff's symptom severity was within the moderate range with treatment. *Id.* at 365. In her "functional assessment," however, she found the following abilities "severely impaired": (1) ability to maintain regular attendance; (2) ability to perform work activities on a consistent basis; (3) ability to perform work activities without special or additional supervision; (4) ability to complete a normal workday or work week without interruptions resulting from psychiatric conditions; (5) ability to relate and interact with coworkers and the public; and (6) ability to deal with the usual stresses encountered in competitive work. *Id.* at 366.

In his decision, the ALJ gave reduced weight to Lacy's assessment after deeming it "internally inconsistent." *Id.* at 24. He explained "[t]he examiner notes severe limitations in nearly all areas of mental functioning and simultaneously notes the severity of his symptoms is within the moderate range with treatment." *Id.* The ALJ also found that "the claimant's medical record contradicts [Lacy's] assessment because they show improvements in functioning with treatment." *Id.*

C. Drs. Foster-Valdez and Funkenstein

Two non-examining state agency physicians also submitted evaluations. In October of 2013, Dr. Foster-Valdez opined that plaintiff was moderately impaired in his ability to: (1) understand, remember, and carry-out detailed instructions; (2) complete a normal workday and work week without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (3) interact appropriately with the general public; (4) get along with coworkers and peers without distracting them or exhibiting behavioral extremes; and (5) respond to changes in the work setting. *Id.* at 91-92. Dr. Funkenstein concurred in that assessment in December of 2013. *Id.* at 99-102.

The ALJ accorded the foregoing findings great weight "because they are consistent with the claimant's medical record as a whole." *Id.* at 24.

6

III. Argument

The ALJ failed to offer specific and legitimate reasons supported by substantial evidence when he discounted Dr. Kazmi's assessment.[2] First, the assertion that Kazmi failed to factor in plaintiff's improved mental functioning with treatment is unpersuasive and contrary to the record. The ALJ stated that "[t]here is evidence that with treatment, the claimant's auditory hallucinations are well managed, as evidence (sic) by his report that that he has not had such symptoms since February 2015. *Id.* at 23. The evidence cited by the ALJ appears to be Dr. Lacy's July 2015 assessment wherein she noted that plaintiff had not experienced any "perceptual disturbances" since February 2015. *Id.* at 360. Given plaintiff's lengthy history of schizophrenia – which stretched back to 2013 (*see, e.g., id.* at 297) – it is unclear whether the absence of auditory hallucinations during the relatively short period ranging from February to July 2015 supports the ALJ's assertion that this symptom is "well managed." *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) ("Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working."); *see also Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989) ("The ALJ's conclusion that Rodriguez was responding to treatment also does not provide a clear and convincing reason for disregarding Dr. Pettinger's opinion. No physician opined that any improvement would allow Rodriguez to return to work"). The court also notes that, during the oral hearing before the ALJ in *June* of 2015, plaintiff remarked that he heard voices say "bad things" approximately twice a week.[3] *Id.* at 46. More critically, auditory

---

[2] The "specific and legitimate" standard applies here because Dr. Kazmi's assessment is contradicted by those of the non-examining physicians. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

[3] Dr. Lacy's assessment that plaintiff had not experienced auditory hallucinations since February 2015 appears to be based on plaintiff's self-reporting. It is unclear why that self-reported information would be more credible than the testimony plaintiff offered at the hearing where, again, he asserted that he continued to experience "voices." This court recognizes that the ALJ is free to resolve issues of credibility, but he must provide some rationalization for crediting one of two conflicting statements when he relies on that statement to discount the assessment of a treating physician.

7

hallucinations were not plaintiff's only negative symptoms on which Kazmi based his assessment. Kazmi stated that paranoia precluded plaintiff's independent functioning and, when exposed to stress, plaintiff became anxious and experienced racing thoughts. *Id.* at 317. The Ninth Circuit has held that "an ALJ must evaluate the physician's assessment using the grounds on which it is based." *Orn v. Astrue*, 495 F. 3d 625, 635 (9th Cir. 2007).

The ALJ's other rationales for discounting Kazmi's assessment are equally unsupported by the record. He states that there is "no significant evidence that [plaintiff] has been involved in interpersonal conflicts; in fact, he reported a good relationship with authority figures." AR at 23. It is unclear how the ALJ defines interpersonal conflicts. It is true that no evidence indicates that plaintiff has undertaken violence against others. Nevertheless, Kazmi, Lacy, and plaintiff's own testimony indicate that plaintiff has limited meaningful contact with individuals outside his own family. *Id.* at 55 (testimony that plaintiff saw friends approximately once a month); 317 ("[H]e does not socialize [with] others."), 360 ("The claimant reports that he stays at home. He has separated himself from his friends until he feels he is stable enough to resume relationships."). Plaintiff's caseworker also testified, at the oral hearing, that "[plaintiff] had a short temper in the home [and] withdrawal from friends." *Id.* at 71. Finally, the ALJ's reliance on plaintiff's weekend trip to Monterrey with his brother in law, plaintiff's ability to go to clothing stores, and positive interactions with office staff during his psychiatric evaluation, does not undermine Drs. Kami and Lacy's assessment or plaintiff's testimony in any meaningful way. Dr. Kazmi never suggested that plaintiff had no contact with the outside world, nor did he suggest that plaintiff was totally incapable of interacting with others. Rather, he stated only that plaintiff was "non-social" and had "few friends." *Id.* at 318.

The ALJ also failed to offer sufficient reasons to support his conclusion that Dr. Lacy's report was internally inconsistent. He states that "[t]he examiner notes severe limitations in nearly all areas of mental functioning and simultaneously notes the severity of his symptoms is within the moderate range with treatment." *Id.* at 24. But it is not *necessarily* inconsistent for an individual to have both moderate symptoms and severe limitations in workplace functioning. See *Garrison*, 759 F.3d at 1017 (holding that reports of improvement "must also be interpreted with

8

an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace."). This failure is compounded by the ALJ's reliance on the opinions of the non-examining physicians, both of whom rendered their opinions in 2013 – years before Drs. Kazmi and Lacy submitted their assessments and during which time plaintiff's condition may well have changed.

IV. Remand for Payment of Benefits

The only question that remains is whether to remand for additional administrative proceedings or for the award of benefits. "The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). The Ninth Circuit has held, however, that it is appropriate to remand for benefits rather than further proceedings where: (1) the ALJ failed to provide legally sufficient reasons to reject a claimant's testimony or a medical opinion; (2) the record has been fully developed; and (3) if the testimony were treated as credible, the ALJ would be required to find the claimant disabled on remand. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014).[4] Those circumstances are met here. The ALJ, as discussed above, failed to provide sufficient reasons for discounting the treating physician's opinion. There is no indication that the record was not fully developed –it includes multiple medical assessments including non-examining consulting, examining consulting, and treating. And, if the treating physician's opinion had been accepted as true, the ALJ would be required to find plaintiff disabled. The court also finds that the lengthy process plaintiff has already endured in his pursuit of benefits (as noted above, he filed his application in 2013) counsels in favor of a remand for payment of benefits. *See Vertigan v. Halter,* 260 F.3d 1044, 1053 (9th Cir. 2001).

CONCLUSION

Accordingly, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 17) is GRANTED;

2. The Commissioner's cross-motion for summary judgment (ECF No. 21) is DENIED;

---

[4] The Commissioner has noted her disagreement with this rule. ECF No. 21 at 13. Nevertheless, this court is bound by circuit precedent.

9

3. This matter is REMANDED for payment of benefits; and

4. The Clerk is directed to enter judgment in the plaintiff's favor and close the case.

DATED: September 12, 2018.

*/s/ Edmund F. Brennan*
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE